John A. DURKIN, Plaintiff,

v.

Ronald L. SNOW et al.,
Defendants,
and
Louis C. Wyman, Intervenor.

Civ. A. No. 74–359.

United States District Court,
D. New Hampshire.

Dec. 18, 1974.

Joseph A. Millimet, Devine, Millimet, Stahl & Branch, William S. Gannon, Manchester, N. H., for plaintiff.

Thomas D. Rath, Asst. Atty. Gen., David A. Brock, Perkins & Brock, Concord, N. H., Stanley M. Brown, Manchester, N. H., David M. Gottesman, Nashua, N. H., for defendants.

Before CAMPBELL, Circuit Judge, and GIGNOUX and BOWNES, District Judges.

## OPINION

This three-judge district court was convened upon the petition of one of the candidates, John A. Durkin, following an exceedingly close and currently disputed election held November 5, 1974, for the office of United States Senator from the State of New Hampshire. Louis C. Wyman, an opponent of Mr. Durkin, has been permitted to intervene here. Initially, Mr. Wyman was officially declared the winner by a plurality of 355 votes. Mr. Durkin applied for a recount pursuant to N.H.R.S.A. 59:94. After the recount, the New Hampshire Secretary of State declared Durkin the winner by 10 votes, and on the same day the Governor and Secretary of State signed a certificate of election which was issued to Durkin with the approval of the Executive Council. R.S.A. 59:98. In accordance with R.S.A. 68:4(II), Wyman appealed to the State Ballot Law Commission (the "Commission") on November 29, 1974. On December 4, 1974, Durkin applied to the federal district court for a temporary restraining order against the Commission on the ground that its proceedings and statutory authorization unconstitutionally usurp the

exclusive jurisdiction of the United States Senate over contested Senate elections under Article 1, Section 5 of the United States Constitution.[1] The district court refused to grant this relief but did grant the request that steps be undertaken to convene a three-judge court, and ordered no change in Durkin's certification until the constitutionality of the Commission's power was determined and the Commission's proceedings completed. Almost simultaneously with the issuance of this order, however, the Governor and Executive Council purported to rescind the certificate issued to Durkin. Proceedings by the Commission have since been in progress. Under R.S. A. 68:4(II), the Commission is to "consider and review all the rulings of the secretary of state on ballots protested during the recount."

After this court was convened, briefs were submitted on behalf of the two candidates as well as the Commission and the Governor and Council and several hearings held, one before the single district judge for the purpose of establishing a factual record, and most recently before the full court for the purpose of receiving oral argument on the legal issues. This court is in agreement with and affirms and adopts all actions heretofore taken by the single judge.

On his original and amended pleadings, Durkin seeks essentially three forms of relief: to enjoin Commission proceedings and declare them void; to order the Governor and Council to issue a new certificate of election to Durkin to replace the rescinded one; and to enjoin the prosecution of proceedings recently commenced by Wyman in the New Hampshire Superior and Supreme Courts raising various aspects of the election and recount proceedings.

We are unable to agree with Durkin that the proceedings before the Commission are unconstitutional. In *Roudebush v. Hartke*, 405 U.S. 15, 25, 92 S.Ct. 804, 811, 31 L.Ed.2d 1 (1972), the Supreme Court held that Indiana's recount procedures did not interfere with the Senate's ultimate authority. The Court said:

"It is true that a State's verification of the accuracy of election results pursuant to its Art. I, § 4, powers is not totally separable from the Senate's power to judge elections and returns. But a recount can be said to 'usurp' the Senate's function only if it frustrates the Senate's ability to make an independent final judgment."

We are satisfied that the statutory proceedings in progress before the Commission, like the Indiana recount in *Roudebush*, are an integral part of the New Hampshire electoral process and are "within the ambit of the broad powers delegated to the States by Art. I, § 4." [2] *Id.* at 23, 92 S.Ct. at 811. The fact that the Indiana recount procedure approved in that case was a one-tier administrative operation, and the New Hampshire procedure involves a recount followed, if a candidate desires, by a Commission review of the rulings of the Secretary of State on ballots disputed during the recount is a distinction without a difference. We are assured by responsible state officials that the New Hampshire proceedings have been and will be accompanied by careful action to preserve all disputed ballots and related evidence so that the Senate, in exercising its final authority over whom to seat, can make "an independent final judgment." *Id.* at 25, 92 S.Ct. 804. We thus find no encroachment upon the Senate's powers and no occasion to enjoin or oth-

---

1. Article I, § 5 provides: "Each House shall be the judge of the Elections, Returns and Qualifications of its own members . . . ."

2. Article 1, § 4 provides in part:
"The Times, Places and Manner of holding Elections for Senators and Representa-

tives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."

erwise interfere with the proceedings before the Commission.

We turn next to plaintiff's request that we order the Governor and Council to reissue to him the certificate that they later revoked. The certificate may have been prematurely issued since under the governing New Hampshire statute, R.S.A. 59:98, a certificate is to be issued upon the Secretary of State's declaration following a recount "unless the result is changed upon appeal to the ballot-law commission." In any event, given our ruling that the proceedings of the Ballot Law Commission may continue, it would make little sense to order issuance of a certificate which can at most have meaning only after the Commission completes its work. The most compelling reason to order reissuance would have been a finding of deliberate disobedience to the order of the single district judge. However, without altogether discounting the possibility, we cannot say that the Governor and Council acted in awareness and defiance of such order. We decline therefore to order issuance of the certificate.

■ Finally, we turn to plaintiff's request that we enjoin litigation in the New Hampshire courts commenced by Wyman. We decline to do so.[3] We find nothing in the maintenance of state court proceedings which would subvert the clear and acknowledged function of the United States Senate to determine whom to seat. No impending state court action or practice has been called to our attention which would impede the independent determination of the outcome by the United States Senate. Whether the New Hampshire courts would exceed their constitutional authority were they to order a new election or to order other types of action are, at this time, purely hypothetical questions which cannot be decided apart from consideration of specific orders. Even if state courts were to intervene in the election process, the Senate would retain the power to ignore the results of a second election or of other action. Indeed, we are not prepared to rule that every conceivable state court action would necessarily be an unwanted intrusion upon the Senate's authority. The New Hampshire state courts have a first hand familiarity with New Hampshire election law. Moreover, the state courts are capable of interpreting the federal Constitution, and of observing its limitations upon state judicial authority.

The door of the federal court remains open should it be demonstrated that state actions or practices are being pursued which deprive the Senate or any candidate of rights conferred by the federal Constitution.

*The complaint is dismissed without prejudice.*

---

3. Because, for reasons stated in text, an injunction against state court proceedings would be an unwarranted exercise of our discretion, we need not decide whether the anti-injunction statute 28 U.S.C. § 2283, separately prohibits such relief. *See Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). While jurisdiction is asserted here as in *Roudebush,* under 28 U.S.C. § 1343(3) and pursuant to a claim under 42 U.S.C. § 1983, the Supreme Court has not expressly discussed, and it is not altogether clear, to what extent a candidate may assert the protection of the civil rights statute in these circumstances.